upon the opinion of the general term. Persistence in the prosecution of a fruitless proceeding, in defiance of decisions of the courts, cannot be held to excuse delay in the institution of a proper proceeding.

The order should be affirmed, with $50 costs and printing disbursements. All concur.

O'SULLIVAN et al. v. NEW YORK EL. R. CO. et al.

(Supreme Court, Appellate Division, First Department. August 4, 1897.)

ELEVATED RAILROADS—DAMAGES TO RENTAL VALUE—EVIDENCE.

 While defendants in an action for rental value of premises by maintenance of an elevated railroad, in which plaintiffs have properly confined themselves to showing "the general course and current of values by persons competent to speak," may, on cross-examination of plaintiffs' witnesses, question them as to the rental history of specific properties in the vicinity, they cannot examine their own witnesses as to such history.

Appeal from special term, New York county.

Action by Eugene O'Sullivan and others against the New York Elevated Railroad Company and another. Judgment for plaintiffs. Defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, O'BRIEN, and PARKER, JJ.

Julien T. Davies, for appellants.
Joseph H. Choate, for respondents.

PATTERSON, J. This is one of the ordinary suits brought to restrain the operation of elevated railways, and, as incidental thereto, to recover damages for impairment of rental values caused by the maintenance of the defendants' structure, and the use of the same as a railway, in front of the plaintiffs' premises. The subject of fee damage has been eliminated from the case, that matter having been settled by the defendants making compensation (since the judgment herein was entered) for the easements taken. We have therefore to consider only so much of the case as is involved in the claim for past damages to rental value, covering a period of something over 19 years, viz. from the time of the completion of the railway structure up to the date of the trial. The premises are Nos. 148, 150, and 152 Pearl street, an important piece of property, forming the southeast corner of Pearl and Wall streets, and No. 92 Pearl street, between Wall street and Old Slip.

The main objection urged by the defendants on this appeal is that the awards are excessive. The argument is made that the trial justice fixed the amount allowed by him as damages for depreciation in rental value upon an erroneous basis, and hence the claimed exorbitant award. An attentive reader of the voluminous record before us could not fail to be impressed by the fact that, within the scope of the evidence, the amount awarded might have been very largely increased had the judge below adopted one theory upon which a recovery might be sustained, viz. the application of an established ratio between rental and fee value; but it is evident from

the result arrived at that that means of ascertaining the amount of damages was not used by the court. It is assumed by the appellants that, as to the more important—i. e. the corner—properties, the justice at special term resorted to an easy and offhand method of reaching the result attained, by first arbitrarily fixing a certain annual sum at which he conceived the property would have rented but for the existence and operation of the road, then deducting from that the rents actually received each year, and allowing the resultant balance as damages. There is nothing to justify such a criticism of the decision of the court below. It is not stated by the judge to be the method by which he reached his conclusion, and it is not to be inferred from forced coincidences, the product of ingenious arithmetical calculations. The question to be determined was the diminution, if any, of rental values caused by the presence and operation of the elevated railway in front of the premises of the plaintiffs, and arising from that, and that alone. It is claimed by the defendants that there were other operative causes diminishing rental values; that the buildings are old, and not able to compete with the more commodious, better constructed, and more desirable modern structures somewhere in the vicinity. There is nothing to show that the court below did not take into consideration all the evidence bearing upon that matter. There was conflicting evidence respecting it. One witness (Golding) swore that to his own knowledge, and within his own experience as an agent for renting very many of the newest and best-equipped modern buildings in the lower part of the city, the erection of that very superior class of office buildings did not materially affect the occupation or rental value of the older and less convenient buildings, and this would apply peculiarly to such exceptionally well-situated property as that of the plaintiffs, the subject of this suit. It was for the court to weigh all the proofs, and we are not able to discover that it failed to do so fairly and wisely, or that it ignored any evidence relating to either or all of the elements properly addressed to the solution of the one question, as to rental value, before it for determination. Upon an analysis of the whole evidence, sifting the testimony of the witnesses on both sides, and comparing their statements, and regarding the history of this particular property and the undoubted effects of the operation of the road upon it, we think the conclusion of the court was just and altogether reasonable. The same may be said concerning the premises No. 92 Pearl street.

A ruling of the trial justice rejecting certain testimony offered by the defendants has been made the subject of elaborate discussion by the appellants. The plaintiffs, in presenting their proofs as to the decline of rental values, kept themselves scrupulously within the rule laid down in Jamieson v. Railway Co., 147 N. Y. 322, 41 N. E. 693. They confined themselves strictly to showing "the general course and current of values by persons competent to speak." On cross-examination these witnesses were interrogated as to particular properties, and the extent of their knowledge and the reliability of their testimony were thus tested by an examination as to their acquaintance with the history of such specific prop-

erties.    That was legitimate cross-examination, and within the
permission of the rule in Jamieson's Case.    But, when the defend-
ants came to put in their case, they sought to examine witnesses in
chief as to the rental history of specific properties situated 'in the
same streets, as to which, on cross-examination, they had interro-
gated the plaintiffs' witnesses.    That evidence was excluded, and
it is now contended that the defendants were entitled to it, and that
the rule in the Jamieson Case did not compel its exclusion, because
it was addressed—First, to showing that the plaintiffs' experts were
not possessed of sufficient knowledge to enable them to give reliable
testimony; second, to show the existence of other causes tending
to reduce rents than the presence and operation of the elevated
railway; and, third, to rebut any inference to be drawn from the
testimony of the plaintiffs' witnesses that the elevated railway was
the sole cause of the decline in the rentals of the plaintiffs' prop-
erty.

The argument of the appellants is plausible, but if we are to fol-
low and be governed by the rule as deduced from the Jamieson
Case, and subsequently reannounced in the Witmark Case, 149 N.
Y. 393, 44 N. E. 78, that argument is unsound. · What is that rule?
In a word, that such evidence as that sought to be given here is
incompetent, relating, as it does, to purely collateral matter.    It
may be introduced on cross-examination, and there it ends.    The
kind of evidence condemned in the cases referred to is not admis-
sible in chief for any purpose.    The errors of experts or other seem-
ingly qualified persons may be shown, and the inferences to be
drawn from their testimony rebutted, by better-instructed persons
on the other side; and the operation of causes other than the ele-
vated railway in reducing rents must be shown by independent proof
of such causes, and not by deductions from the experience of par-
ticular landlords in renting their respective properties, which would
necessarily involve inquiries into every detail of plan, condition,
state of repair, and general administration of each house made the
subject of investigation.    Where that would lead to is well stated
in the Witmark Case, in which it is said:

"The extent of the investigation would be subject to no limits except such as
might be presented by the discretion of the trial court, and, even when it
could be shown that the property was substantially similar as to locality and
surroundings, yet different parcels of property are affected in their values by
so many different causes that, in the end, there must be left a wide field for
conjecture and speculation.    The scope of the inquiry would be enlarged be-
yond all necessary and proper limits, and the minds of court and jury con-
fused with a multitude of conflicting and irrelevant facts."

The court below was right in its ruling as to this rejected evi-
dence, unless we have altogether misapprehended the ruling in the
Jamieson Case, the reasons given for it, and the necessary conse-
quences of it.

No other exception requires consideration, and the judgment must
be affirmed, with costs.    All concur.